DAVID B. ABEL (Bar No. 156744)
davidabel@abelpatentlaw.com
**LAW OFFICE OF DAVID B. ABEL**
111 N. Sepulveda, Suite 250
Manhattan Beach, CA 90266
Tel: 310.937.1590
Attorneys for Defendants
**Genesis Gaming Products, Inc.**,
**California Commerce Club, Inc.**

Daphne L. Burton
**Burton IP Law Group**
2029 Century Park East,
Suite 400N
Los Angeles, CA 90067
Tel: (310) 867-2754
Fax: (310) 943-1470

Attorneys for Defendant
**IT Casino Solutions, LLC**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERANTH, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>GENESIS GAMING SOLUTIONS, INC., et al.,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIMS. | Case Nos.<br>SA 11-cv-0189 AG (RMBx)<br>SA 8:13-00720-AG-(RNBx)<br><br>**DEFENDANTS' OPPOSITION TO AMERANTH'S MOTION IN LIMINE #1(A) AND (B) TO EXCLUDE CERTAIN OPINIONS OF BRUCE MCFARLANE**<br><br>Judge: Hon. Andrew J. Guilford<br>Pre-Trial Date: Feb. 2, 2015<br>Time: 8:30 a.m.<br>Place: Courtroom 10(D)<br><br>Trial Date: Feb. 10, 2015 |

**DEFENDANTS' OPPOSITION TO AMERANTH'S MIL # 1(a) and (b)**

# OPPOSITION TO AMERANTH'S MIL #1(a) and (b)

Defendant Genesis Gaming Solutions, Inc.'s ("Genesis") and IT Casino Solutions, LLC ("ITCS") (collectively, "Defendants") file this response in opposition to Ameranth, Inc.'s ("Ameranth") Motions in Limine to Exclude Certain Opinions of Bruce McFarlane Regarding Genesis' Infringement Damages (MIL # 1(a)) and Regarding ITCS' Infringement Damages (MIL # 1(b)).

## I. INTRODUCTION

Dr. McFarlane's testimony and opinions concerning Ameranth's damages are both relevant and reliable and meet the standards of the Federal Rules of Evidence and *Daubert.* Ameranth claims to attack Mr. McFarlane's methodology; however, their argument consists mostly of an attack on Mr. McFarlane's conclusions based on admittedly disputed facts in the case. Ameranth's arguments go to the weight of Mr. McFarlane's testimony, not its admissibility. Accordingly, Ameranth's Motion to Exclude should be denied in its entirety. Pursuant to this Court's Order [ECF Dkt. No. 283], Defendants contend that Ameranth's MIL #1(a) and (b) have been filed for the improper reason of attempting to resolve issues prematurely before they are viewed in the context of trial. *Mixed Chicks, LLC v. Sally Beauty Supply, LLC*, 879 F. Supp. 2d 1093 (C.D. Cal. 2012) (*Mixed Chick* Factor (G)).

## II. LEGAL STANDARD

Federal Rule of Evidence 702 provides that an expert may give opinion testimony if the testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue" and "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid.

702; *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591-92 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-58 (1999). When considering expert testimony offered pursuant to Federal Rule of Evidence 702, the trial court acts as a "gatekeeper" by assessing the soundness of the expert's methodology to exclude junk science. *Estate of Barabin v. AstenJohnson, Inc.,* 740 F.3d 457, 463 (9th Cir. 2014). A primary guideline of Fed. R. Evid. 702 and the *Daubert* standard is that the damages methodology must be reliable. *GPNE Corp. v. Apple, Inc*., 2014 U.S. Dist. LEXIS 53234, 33 (N.D. Cal. Apr. 16, 2014). However, the inquiry into admissibility of expert opinion is a "flexible one," where "[s]haky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010); *see also Implicit Networks, Inc. v. F5 Networks, Inc.*, 2013 WL 1007250 (N.D. Cal. Mar. 13, 2013) (finding in a patent case that the "deficiencies" in an expert's testimony "go to the weight a jury might give [the expert's] conclusions and not their admissibility").

## III.    ARGUMENT REGARDING GENESIS DAMAGES

### *1.  Nominal Damages for Dealer Management Was Correct*

As the Federal Circuit has explained, where multi-component products are involved, the governing rule is that the ultimate combination of royalty base and royalty rate must reflect the value attributable to the infringing features of the product, and no more. *VirnetX, Inc. v. Cisco Systems, Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014). The essential requirement is that the ultimate reasonable royalty award must be based on the incremental value that the patented invention adds to the end product. *Ericsson, Inc. v. D-Link Sys.*, 2014 U.S. App. LEXIS 22778, 53-54 (Fed. Cir. Dec. 4, 2014). In its Motion, Ameranth attacks Mr. McFarlane's opinion that in the

hypothetical negotiations, Genesis would not agree to pay anything more than a nominal amount for a license to the claimed dealer management features. Mot. at 5. Ameranth's disagreement with Mr. McFarlane's opinion is not a basis to exclude his testimony. *See Primiano v. Cook*, 598 F.3d at 564. It is enough that Mr. McFarlane has expressed his opinion in a manner that could be helpful to the jury and that his opinion is relevant and supported by evidence.

### a. Relying on Technical Expert Was Proper

Mr. McFarlane bases his conclusion on the opinion of Genesis' technical expert, Mr. Easttom, that removing the dealer management functionality from the Bravo System would be a relatively minor task. Mot. at 4. An expert is entitled to offer opinion testimony based on any materials "of the type reasonably relied on by experts in the particular field." *See* Fed. R. Evid. 703. It is routine and proper for a damages expert in a technical patent case to rely on a technical expert for background. *See, e.g., Eolas Techs., Inc. v. Microsoft Corp.*, 270 F. Supp. 2d 997, 1006-07 (N.D. Ill. 2003). Ameranth may dispute whether removing the dealer management functionality would be a relatively minor task, but the proper recourse is for Ameranth to present contrary evidence at trial and attack Mr. Easttom's and Mr. McFarlane's testimony on cross-examination. *See Primiano v. Cook*, 598 F.3d at 564; *see also Micro Chem,. Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1392 (Fed. Cir. 2003) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony.").

### b. Relying on Witnesses With Factual Knowledge Was Proper

In addition to relying on Mr. Easttom for technical information, Mr. McFarlane also bases his conclusion on information contained in the evidence produced, the

papers filed in this case, publicly available data, and information he learned during conversations with Randy Knust, the CEO of Genesis, and Eric Schoppe, the Chief Technical Officer of Genesis. Mot. at 5. As CTO, Mr. Schoppe was a likely person to contact to obtain the necessary information and not an attempt to "circumvent" the expert witness requirements of Fed. R. of Evid. 701, as argued by Ameranth. *See Interwoven, Inc. v. Vertical Computer Sys.*, No. 10-cv-04645 (N.D. Cal. July 18, 2013). Mr. Schoppe's status as an officer of Genesis does not necessarily taint him as a source of information. Indeed, should such taint be a concern, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 595.

In addition, Ameranth's Motion focuses too narrowly on evidence provided by Genesis' employees while failing to address the other evidence Mr. McFarlane discussed in his Expert Report. For example, Mr. McFarlane points to the fact that Genesis sold the Bravo System for several years before the Table Rotation module was added and during that time casinos used other means to disseminate rotation information. *See* Watts Decl. [ECF Dkt. 298-1], Expert Report at 44. Furthermore, there was demand for the Bravo System well before it included any allegedly infringing dealer rotation functionality. *Id.* at 46. Such facts are evidence in the record that the value attributable to the dealer rotation functionality was minimal. This is, therefore, not a case in which the expert relies entirely on assumptions and simplifications that are not supported by evidence.

Ameranth's disagreement with Mr. McFarlane's interpretation of the facts on which he based his opinion that the claimed dealer rotation functionality added very

4

little value to Genesis' Bravo System is not a proper ground for excluding an expert. *Micro Chem.*, 317 F.3d at 1392. Any concerns Ameranth may have that testimony of Genesis' employees might be self-serving can be addressed via vigorous cross-examination and presentation of contrary evidence at trial. *Daubert*, 509 U.S. at 595.

### c. Separating Player Management Royalty From Dealer Management Royalty Was Proper

Ameranth next attacks Mr. McFarlane's Expert Report as failing to consider that additional aspects of the Bravo System other than the Dealer Rotation module might infringe claims 6 and 7 of the '650 patent. Mot. at 9. There are at least two fatal flaws with Ameranth's argument. First, as explained in Genesis' Motion to Exclude Ameranth's damages expert, Ameranth's technical expert stated that removing the dealer management functionality would result in a non-infringing system. *See* Mot. to Exclude Dr. Brown [ECF Dkt. 317] at 7 (quoting Dr. Shamos as saying: "If everything related to dealers is taken out of the system, then I don't see how I can prove infringement of the dealer related claims and it would be non-infringing"). Second, what Ameranth is essentially arguing is that, if found to infringe claim 7 of the '650 Patent, Genesis should be required to pay royalties under both claim 1 and claim 7 of the '650 Patent. This amounts to patent misuse. Claim 1 of the '650 Patent was cancelled during reexamination. A party is not entitled to damages on cancelled claims. *See Medtronic Inc. v. Cardiac Pacemakers, Inc.*, 721 F.2d 1563, 1583 (Fed. Cir. 1983) ("[A]n invalid claim cannot give rise to liability for infringement.").

A key issue in calculating the infringement damages for complex technological products is whether it is appropriate to use the value of the entire device in the damages calculation. Generally speaking it is not appropriate to do so: "when claims

are drawn to an individual component of a multi-component product, it is the exception, not the rule, that damages may be based upon the value of the multi-component product." *Virnetx, Inc.*, 767 F.3d at 1326. This is due to the general requirement that damages must be actually attributable to the infringing features within a reasonable degree of precision. "When a patent is for an improvement, and not for an entirely new machine or contrivance, the patentee must show in what particulars his improvement has added to the usefulness of the machine or contrivance. He must separate its results distinctly from those of the other parts, so that the benefits derived from it may be distinctly seen and appreciated." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1337 (Fed. Cir. 2009).

Mr. McFarlane's expert report does exactly what experts are required to do—he assumed the Bravo System infringed then allocated damages only to the valid claims of the patents being asserted. *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318 (Fed. Cir. 2011) (the patentee must apportion damages between the patented feature and the unpatented features).

Even ignoring the impropriety of Ameranth wanting royalties for a cancelled claim, Mr. McFarlane's conclusion that infringement of claims 6 or 7 of the '650 Patent does not require payment of royalties for the Player Management field of use is consistent with many of Ameranth's licenses of the patents in suit. For example, one of Ameranth's license agreements specifically calls out that claims 6 and 7 of the '650 Patent relate to the Dealer Management field of use, whereas independent claim 1 of the '650 Patent relates to the Player Management field of use. *See* Watts Decl. [ECF Dkt. 298-1], McFarlane Expert Report at 31, fn 137.

Mr. McFarlane has provided a factual basis and an explanation for his conclusion that the reasonable royalty for any alleged infringement by Genesis of claims 6 or 7 of the '650 Patent would not include royalties for the Player Management field of use, and, therefore, should not be excluded. *See ResQNet, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869-70 (Fed. Cir. 2010).

### d. Date of Hypothetical Negotiation Was Proper

Ameranth contests the date Mr. McFarlane used for the date the hypothetical negotiation would have occurred. Mot. at 9. To support this argument, Ameranth again asserts that the "Scrolling Marquee" functionality alone, without the Dealer Rotation module, infringes claim 7 of the '650 Patent. *Id.* at 10. As stated above, there can be no infringement without the dealer rotation module, a position which was confirmed by Ameranth's technical expert. Regardless, disputes over the hypothetical negotiation date are matters for cross-examination—not grounds to exclude a damages expert's opinion in its entirety. *See Micro Chem.*, 317 F.3d at 1392; Fed. R. Evid. 702, Advisory Committee's Note ("When facts are in dispute, experts sometimes reach different conclusions based on competing versions of the facts. The emphasis in the amendment on 'sufficient facts or data' is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other.").

*2. McFarlane Was Correct in Not Providing Total Damages Award*

Ameranth next attacks Mr. McFarlane's report by arguing that it is unreliable because he does not provide a total damages award. Mot. at 11-13. However, expert testimony need only be relevant, and need not establish every element in order to be admissible. *See Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010). When

calculating a reasonably royalty award, the governing rule is that the ultimate combination of <u>royalty base</u> and <u>royalty rate</u> must reflect the value attributable to the infringing features of the product, and no more. *VirnetX, Inc.*, 767 F.3d at 1326 (emphasis added). Mr. McFarlane determined that the reasonable royalty would be equal to the royalty rates he concluded were appropriate applied to the number of poker tables the court finds to infringe the player management field of use. Mot. at 12. Ameranth does not dispute that Mr. McFarlane provided the royalty rate or that Mr. McFarlane provided the royalty base. *Id.* Rather, Ameranth asserts that Mr. McFarlane's expert report is not helpful and speculative because he did not calculate the total royalty amount. *Id.* Ameranth then asks this Court to preclude Mr. McFarlane from rendering an opinion at trial as to the amount of damages. *Id.* Genesis, obviously, disagrees. Far from being speculative, Mr. McFarlane refrains from multiplying the royalty base by the royalty rate because Ameranth has not provided any evidence of the number of infringing poker tables. Ameranth cites to *Lam, Inc. v. Johns-Manville Corp.* as supportive of its position. *Id.* However, that case actually supports Mr. McFarlane's desire not to speculate. In that case, which related to lost profits, there was ambiguity as to the number of units sold and the Federal Circuit approved of the district court "accepting the more credible evidence <u>after it had heard testimony and reviewed documentary evidence from both sides</u>." *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983) (emphasis added). This is the approach Mr. McFarlane has taken. Rather than speculating that every single poker table infringes (as Dr. Brown did), Mr. McFarlane has established a royalty rate and defined a royalty base. He has applied the proper principles and methods reliably to the facts of the case and should not be excluded.

## IV. ARGUMENT REGARDING ITCS DAMAGES

In the Motion to Exclude Certain Opinions of Bruce McFarlane Regarding ITCS ("ITCS Mot."), Ameranth takes issue with Mr. McFarlane's opinion that the royalty rate Genesis would agree to in a hypothetical negotiation would be a significant factor in determining the royalty rate that would result from a hypothetical negotiation between Ameranth and ITCS. ITCS Mot. at 3. Ameranth asserts that Mr. McFarlane's report contains only a single paragraph dealing with ITCS, but this is not true. A review of Mr. McFarlane's expert report shows that ITCS, ITCS' software, and how Ameranth's patent licenses relate to ITCS are referenced throughout. In the ITCS Motion, Ameranth makes several straw man arguments, rewording and expanding Mr. McFarlane's single opinion in order to attack it. This is not proper. For example, Ameranth states that Mr. McFarlane concluded that "ITCS would be entitled to [a Most Favored Nation] type provision." ITCS Mot. at 4. However, Mr. McFarlane offered no such opinion. He stated only that because ITCS and Genesis compete in the same market, ITCS wouldn't agree to a higher rate than Genesis because to do so would put it at a competitive disadvantage. *Id.* Ameranth disagrees with this statement, but their disagreement is not a proper ground for excluding an expert. *Micro Chem.*, 317 F.3d at 1392. Ameranth states that Mr. McFarlane doesn't explain how ITCS (a small software provider) could negotiate the same rate as Genesis (a much larger software provider). ITCS Mot. at 4. However, Mr. McFarlane only opines that the Genesis royalty rate would be a significant factor in the hypothetical negotiations between Ameranth and ITCS. *Id.* Mr. McFarlane's opinion is based on evidence found throughout his expert report. For example, each of Ameranth's previous licenses contained the same per-table royalty rate, regardless of

9

the size of the casino. That Ameranth disagrees over the results of the hypothetical negotiation are matters for cross-examination—not grounds to exclude a damages expert's opinions in its entirety. *See Micro Chem., Inc.*, 317 F.3d at 1392. Any deficiencies Ameranth may allege in Mr. McFarlane's sole opinion with respect to ITCS—that the Genesis royalty rate would be a significant factor in the hypothetical negotiations between ITCS and Ameranth—go to the weight a jury might give Mr. McFarlane's conclusions and not their admissibility. *Implicit Networks, Inc. v. F5 Networks, Inc.*, 2013 WL 1007250 (N.D. Cal. Mar. 13, 2013).

## V. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Ameranth's MIL#1(a) and (b).

Dated: January 16, 2015         Law Office of David B. Abel

                                By:  /s/ Jeffrey A. Tinker
                                        Jeffrey A. Tinker
                                *Attorneys for Defendant & Counterclaimants*
                                GENESIS GAMING SOLUTIONS, INC. &
                                *Counterclaimant*
                                CALIFORNIA COMMERCE CLUB, INC.

Dated: January 16, 2015         Burton IP Law Group
                                By:  /s/ Daphne L. Burton

                                *Attorneys for Defendants & Counterclaimants*
                                IT CASINO SOLUTIONS, LLC

10

# CERTIFICATE OF SERVICE

I hereby certify that on January 16, 2015, I electronically filed the foregoing document using the CM/ECF system, which will send notification of such filing via electronic mail to all counsel of record.

*/s/ Jeffrey A. Tinker*
Jeffrey A. Tinker